USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ___________
DATE FILED: 6/27/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JOSE PARRA HERRERA, *individually and on behalf of all other persons similarly situated*,

Plaintiff,

-against-

449 RESTAURANT, INC., *jointly and severally d/b/a* MOONSTRUCK EAST, and JOHN KAPETANOS, *jointly and severally*,

Defendants.

-------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER**

15cv6647-RA-FM

**FRANK MAAS**, United States Magistrate Judge.

Plaintiff Jose Parra Herrera ("Parra") brings this putative collective action on behalf of himself and other persons alleged to be similarly situated. He seeks to recover unpaid minimum wages and overtime compensation pursuant to the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, et seq. (See ECF No. 1 ("Complaint" or "Compl.")).

Parra has now moved for conditional certification of a collective action under the FLSA and court-facilitated notice of the action to all potential opt-in plaintiffs. (ECF No. 24). For the reasons set forth below, Parra's motion is granted in part and denied in part.[1]

---

[1] Motions for conditional certification of a collective action under the FLSA are non-dispositive. See Bijoux v. Amerigroup New York, LLC, No. 14 Civ. 3891 (RJD) (VVP), 2015 WL 5444944, at *1 (E.D.N.Y. Sept. 15, 2015).

I. Relevant Facts

Defendants 449 Restaurant, Inc., and John Kapetanos (together, the "Defendants") operate a restaurant in Manhattan known as "Moonstruck East." (Compl. ¶¶ 8-9, 12). Parra was employed by the Defendants as a dishwasher/deliveryman from approximately September 20, 2014, until July 11, 2015. (Id. ¶¶ 17-18; ECF No. 27 (Aff. of Jose Parra Herrera, sworn to on Feb. 23, 2016 ("Parra Aff.")), ¶¶ 2-4). Parra's duties also included cleaning the restaurant's basement and cutting potatoes. (Parra Aff. ¶ 3).

Parra contends that he regularly worked between eleven and twelve hours per day, six days per week, from September 2014 until March 2015. (Compl. ¶ 19; Parra Aff. ¶ 5). According to Parra, beginning in March 2015, the Defendants reduced most of their kitchen workers' scheduled hours to seven hours per day, six days per week (for a total of 42 hours per week). (Parra Aff. ¶ 10; see also id., Ex. 1 (specimen schedule for staff)). He alleges, however, that he worked more hours than his new schedule indicated – often coming in early, staying late, or not taking his full hour-long lunch break. (Id. ¶ 5). Parra estimates that from March 2015 until the end of his employment in July 2015, he worked between 47 and 50 hours per week. (Compl. ¶ 19; Parra Aff. ¶ 5). He further alleges that he was paid, in cash, $320 per week during his first two weeks of employment, and $340 per week thereafter. (Parra Aff. ¶ 6).

Parra contends that he and other employees of the Defendants were victims of a common compensation policy, violative of the FLSA, pursuant to which they were paid neither minimum wage for all hours worked, nor overtime when they worked in

excess of forty hours per week. (Compl. ¶¶ 11, 22-23; Parra Aff. ¶¶ 8-9, 20-21; see also ECF No. 25 (Pl.'s Mem. of Law in Supp. of Mot. ("Pl.'s Mem.")) at 4, 10). Parra's contentions are further supported by the affidavit of opt-in plaintiff Marco Flores ("Flores"). (See ECF Nos. 23, 26 (Aff. of Marco Flores, sworn to on Mar. 4, 2016 ("Flores Aff.")). Flores was employed at Moonstruck East as a dishwasher/deliveryman from approximately February until August 2015. (Flores Aff. ¶¶ 2-4). Like Parra, Flores' duties included cleaning and cutting potatoes. (Id. ¶ 3). Flores contends that he typically worked between 42 and 46 hours per week throughout his employment at Moonstruck East, and also sometimes did not take his full hour-long lunch break. (Id. ¶ 5). He further alleges that he was paid a flat rate of $320 per week from February until May 2015. (Id. ¶ 6). Thereafter, he was paid $320 per week when he worked his scheduled hours, and $340 per week when he worked additional hours. (Id.).

Parra alleges that, in addition to Flores, the Defendants employed approximately eight additional kitchen workers whose duties were similar to his duties. (Parra Aff. ¶ 10). Parra identifies six of these employees by their first names in his affidavit: Marcos, Leo, Gustavo, Alfredo, Alejo, and David. (Id. ¶¶ 11-18; see also Flores Aff. ¶ 10). Parra alleges that all of these employees worked at least their 42 scheduled hours per week. (Parra Aff. ¶¶ 10-19; id., Ex. 1; see also Flores Aff. ¶ 10). Based on Parra's observations, at least two of these employees – Leo and Alejo – also often came in early, stayed late, or did not take their full hour-long lunch breaks. (Parra Aff. ¶¶ 12, 17). Leo told Parra that "the [D]efendants started the kitchen workers off with

a salary of $320, [after which] it was customary to negotiate with the managers . . . for a higher salary." (Id. ¶ 11). Yet another kitchen worker, Marcos,[2] told Flores that he also was paid $320 per week for working approximately nine to ten hours per day, six days per week. (Flores Aff. ¶ 10).

II. Legal Standard

The FLSA establishes a minimum hourly wage that employers must pay their employees and requires employers to pay overtime wages, at a rate one and one-half times an employee's normal hourly rate, for any hours worked in excess of forty hours in a single week. 29 U.S.C. §§ 206, 207.

The FLSA authorizes an aggrieved employee to maintain a collective action on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). Such an action is not subject to the class action requirements of Rule 23 of the Federal Rules of Civil Procedure. Davis v. Lenox Hill Hosp., No. 03 Civ. 3746 (DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 3, 2004). Accordingly, there need not be a showing of numerosity, commonality, typicality, or adequacy of representation. Id. To bring a collective action, a plaintiff first must show that the defendants' pay practices violated the FLSA. 29 U.S.C. § 216(b). Plaintiffs who wish to participate in that collective action then must "opt in" by consenting in writing to join the suit and filing their consents with

---

[2] Flores' affidavit refers to this individual as "Marco." (Flores Aff. ¶ 10). It appears that the Defendants employed both a "Marco" and a "Marcos." (See Parra Aff., Ex. 1). Since Flores' first name is "Marco," however, it appears that the person to whom Flores refers is actually named "Marcos."

the court in which the action was brought. Id. In keeping with the FLSA's "broad remedial purpose," district courts may facilitate notice to other potential similarly-situated employees to inform them of the opportunity to opt in. Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169-70, 173 (1989); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978).

Courts in this Circuit employ a two-step process to decide whether to certify a collective action under Section 216(b). See Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010); Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007). At the first step, the court makes an initial determination as to whether other potential plaintiffs are situated similarly to the named plaintiff with respect to the alleged FLSA violations. Myers, 624 F.3d at 555. At the second step, following discovery, the court reconsiders its preliminary determination as to whether the opt-ins are similarly situated. Id.

Although the FLSA itself does not define the term "similarly situated," courts require that there be a "factual nexus between the claims of the named plaintiff and those who have chosen [or might potentially choose] to opt-in to the action." Davis, 2004 WL 1926086, at *7 (internal quotation marks omitted). The relevant issue is not whether the named plaintiff and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA. Myers, 624 F.3d at 555.

The term conditional certification is actually something of a misnomer. Morangelli v. Chemed, 275 F.R.D. 99, 104 n.1 (E.D.N.Y. 2011), amended on reconsideration (July 8, 2011). At this first stage, all a court really is doing is facilitating the sending of notice to potential class members. Myers, 624 F.3d at 555. Accordingly, because this discretionary determination takes place early in the litigation and often before discovery has begun, a named plaintiff need make only a "modest factual showing" that he and other potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." Id. (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, D.J.)). Plaintiffs thus may satisfy their burden by relying on "their own pleadings, affidavits, [and] declarations, or the affidavits and declarations of other potential class members." Hallissey v. Am. Online, Inc., No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). Indeed, the burden is so low that even one or two affidavits establishing the common plan may suffice. See, e.g., Hernandez v. Bare Burger Dio Inc., No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (named plaintiff's affidavit); Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 327, 331 (S.D.N.Y. 2010) (two affidavits). Unsupported assertions in the pleadings, however, cannot satisfy a plaintiff's burden. Myers, 624 F.3d at 555.

When there are ambiguities in the papers seeking collective action status, the court must "draw all inferences in favor of the [p]laintiff" at the preliminary certification stage. Mendoza v. Ashiya Sushi 5, Inc., No. 12 Civ. 8629 (KPF), 2013 WL

5211839, at *4 (S.D.N.Y. Sept. 16, 2013) (quoting Jenkins v. TJX Cos. Inc., 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012)). Thus, at this stage, the court may not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Lynch, 491 F. Supp. 2d at 368; see also Hoffmann-La Roche, 493 U.S. at 174 ("[T]rial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."). Nor should the court "weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." Lynch, 491 F. Supp. 2d at 368. The court's limited role at this stage is simply to determine whether the plaintiff has sufficiently alleged that he and other employees were victims of a common compensation policy that violated the FLSA. Id.

Once notice has been sent to the potential opt-in plaintiffs and discovery closes, the court may entertain a defendant's motion to decertify the action. This second stage of the process involves a "more stringent factual determination," id., which requires the court, "on a fuller record, [to] determine whether a [collective action] may go forward [because] the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs," Myers, 624 F.3d at 555. If the opt-in plaintiffs are revealed not to be similarly situated, the court may decertify the class and dismiss the opt-in plaintiffs' claims without prejudice. Id.

III. Discussion

A. Conditional Collective Action Certification

For the reasons set forth below, Parra has made the requisite "modest factual showing" that he and other dishwashers/deliverymen at Moonstruck East were "victims of a common policy or plan that violated the law." Myers, 624 F.3d at 555. Parra has not adequately shown, however, that he is situated similarly to any other Moonstruck East employees, including cooks and non-kitchen staff.

1. Parra's Individual FLSA Claims

To bring a collective action, Parra first must show that he, himself, was a victim of the Defendants' illegal pay practices. See Vengurlekar v. Silverline Techs., Ltd., 220 F.R.D. 222, 230 (S.D.N.Y. 2003) (denying collective action certification where named plaintiffs were exempt from the FLSA's requirements). In his affidavit, Parra states that he regularly worked between 66 and 72 hours per week during his first seven months at Moonstruck East, and between 47 and 50 hours per week thereafter, but was paid neither for all of these hours nor overtime for his hours in excess of forty per week. (Parra Aff. ¶¶ 5-9). Indeed, at no time was Parra paid more than $340 per week. (Id. ¶ 6). Based on the number of hours he allegedly worked each week, and the amount he was paid, Parra claims to have been subject to both minimum wage and overtime FLSA violations.

The Defendants oppose the individual FLSA claims of both Parra and Flores, contending that they paid them by the hour, not at a flat weekly rate. (ECF No. 29

(Defs.' Mem. of Law in Opp. ("Defs.' Mem.")) at 3-4). As support, the Defendants have provided daily time and pay records, purportedly signed by Parra and Flores, which indicate that they were paid $7.25 per hour, plus overtime when required, for every hour they worked. (See id. at 3-4, 6; ECF No. 30 (Aff. in Opp. of John Kapetanos, sworn to on Mar. 24, 2016), Exs. A-C (time and pay records)). In the Defendants' view, Parra therefore cannot establish the existence of a common practice or scheme to deny wages to himself, Flores, or any other Moonstruck East employees. (Defs.' Mem. at 3-4).

At this preliminary stage, whether Parra will eventually succeed on the merits of his FLSA claims is immaterial. See, e.g., Lynch, 491 F. Supp. 2d at 368 (court must not "weigh the merits of the underlying claims" at the preliminary certification stage). Accordingly, if the Defendants wish to pursue the argument that they, in fact, paid Parra appropriately by the hour, they may – but they must do so at a later stage. Their effort to raise that defense now in opposition to Parra's motion for collective certification is premature. See, e.g., Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 407 n.6 (S.D.N.Y. 2012), class decertified on other grounds by Ruiz v. Citibank, N.A., 93 F. Supp. 3d 279 (S.D.N.Y. 2015) ("[C]ourts in this Circuit regularly conclude that [competing] declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process."); Pippins v. KPMG LLP, No. 11 Civ. 0377 (CM) (JLC), 2012 WL 19379, at *12 (S.D.N.Y. Jan. 3, 2012) (refusing to balance parties' competing affidavits at preliminary certification stage); Cohen, 686 F. Supp. 2d at 330 (declining to "wade into a thicket of competing factual assertions at this preliminary

stage"); LeGrand v. Educ. Mgmt. Corp., No. 03 Civ. 9798 (HB) (HBP), 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004) ("To the extent that defendants are attempting [to] argue the merits of the case, they are raising an issue that is not material to the current application.")

In sum, through his affidavit alone, Parra has adequately alleged that he was subject to minimum wage and overtime violations. The Defendants may not impeach that showing at this juncture. Accordingly, the only remaining question presented by Parra's motion is whether he also has shown that there are other similarly-situated potential plaintiffs.

2. Similarly-Situated Potential Plaintiffs

Parra has identified by name seven other Moonstruck East dishwashers/deliverymen with duties similar to his own: opt-in plaintiff Flores, plus Marcos, Leo, Gustavo, Alfredo, Alejo, and David. (Parra Aff. ¶¶ 11-18; see also Flores Aff. ¶ 10).[3] In his own affidavit, Flores states that he regularly worked between 42 and 46 hours per week, but was paid neither for all of these hours nor overtime for his hours

[3] Parra also has identified a kitchen worker named Bruce, but acknowledges that the Defendants paid him $700 per week. Although Parra alleges that he witnessed Bruce work "greater than forty hours each week," there is no suggestion that Bruce worked so many overtime hours that $700 per week would amount to less than minimum wage plus overtime. (Parra Aff. ¶ 15).

in excess of forty per week. (Flores Aff. ¶¶ 5-8).[4] Parra also contends that the remaining dishwashers/deliverymen he has identified worked at least 42 hours per week. (Parra Aff. ¶¶ 10-19; see also id., Ex. 1). Indeed, Parra alleges that he witnessed at least two such employees – Leo and Alejo – work in excess of 42 hours per week, (id. ¶¶ 12, 17), and Flores alleges that Marcos told him that he worked between 54 and 60 hours per week, (Flores Aff. ¶ 10). Finally, Parra has presented evidence that at least Marcos was paid only $320 per week, (id.), and that his conversations with other employees confirmed that this was the "customary" starting salary and that others also were paid "in the same manner" – i.e., they were "not paid on an hourly basis, were not paid the lawful minimum wage, and were not separately paid overtime premium for the hours they worked in excess of forty per workweek," (Parra Aff. ¶ 20).

The statements that Parra and Flores attribute to their fellow dishwashers/deliverymen are, of course, hearsay, but may be relied upon at this stage. See Salomon v. Adderley Indus., Inc., 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012) ("[C]ourts regularly rely on . . . hearsay statements in determining the propriety of

---

4 As noted previously, Flores alleges that he was paid a flat rate of $320 per week from February until May 2015, after which he received $320 per week when he worked his scheduled hours, and $340 per week when he worked additional hours. (Flores Aff. ¶ 6). It therefore appears that, in weeks that he worked only 42 hours and was paid $320, Flores did in fact receive the minimum wage for 40 regular and two overtime hours, as follows: ($7.25 per hour x 40 hours) + (($7.25 per hour x 1.5) x 2 hours) = $311.75. In weeks prior to May 2015 in which Flores worked 43 or more hours for $320, however, he did not receive the minimum wage for all of his hours. Similarly, after May 2015, when Flores began to receive $340 in weeks that he worked more than 42 hours, his compensation was adequate when he worked up to 44 hours, but not when he worked 45 or more hours.

sending notice" in FLSA conditional certification cases). Parra thus has adequately alleged that he and the other dishwashers/deliverymen at Moonstruck East were victims of a common compensation policy that violated the FLSA. See, e.g., Hallissey, 2008 WL 465112, at *1 (plaintiff may rely on "[his] own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members" to satisfy his first-step burden) (emphasis added); Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., No. 12 Civ. 265 (PAE), 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (granting conditional collective certification based on a single employee's affidavit alleging that she and other employees who performed "similar" work were paid less than the statutory minimum and not compensated for overtime); Bowens v. Atlantic Maint. Corp., 546 F. Supp. 2d 55, 82-84 (E.D.N.Y. 2008) (conditional certification granted despite lack of any evidence corroborating plaintiff's own affidavit).

In an effort to avert this conclusion, the Defendants argue that Parra's affidavit consists of "vague," "unsupported," and "boilerplate" statements that do not satisfy his minimal burden. (See Defs.' Mem. at 5-6 (citing Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106 (2d Cir. 2013); Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d 192 (2d Cir. 2013); Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85 (2d Cir. 2013))). In doing so, the Defendants erroneously conflate the standard for pleading a plausible individual FLSA claim with the standard for alleging the existence of a common employment policy that violates the FLSA. In fact, these cases

address only the adequacy of pleadings alleging that the defendants failed to pay their employees for overtime work. They are therefore inapposite.[5]

In sum, the relevant issue at the preliminary certification stage is not whether the named plaintiff and any potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA. Parra's proffered evidence is more than sufficient to make the required "modest factual showing" that he and other potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." Myers, 624 F.3d at 555. Accordingly, Parra has adequately alleged the existence of similarly-situated potential plaintiffs.

---

[5] All three cases involved health care providers. In Lundy, the Second Circuit considered for the first time the degree of specificity required to state a plausible FLSA overtime claim, holding that "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." 711 F.3d at 114. There, the plaintiffs failed to state a claim because they approximated their typical shift lengths and breaks, but the hours alleged did not add up to over forty hours in any particular week. Id. at 114-15. Similarly, in Nakahata, the Second Circuit found that, "absent any allegation that [the p]laintiffs were scheduled to work forty hours in a given week," allegations that they were not paid for work performed during breaks, before and after shifts, or during required training raised only the "possibility" of an overtime claim, which failed to "state a plausible claim for such relief." 723 F.3d at 201. Finally, in Dejesus, dismissal of the complaint was proper because the plaintiff "did not estimate her hours in any or all weeks or provide any other factual context or content." 726 F.3d at 89. Instead, she simply tracked the language of the statute, stating that she had worked more than forty hours without appropriate overtime compensation in "some or all weeks." Id.

Here, by comparison, the issue is not the sufficiency of Parra's pleadings. Nonetheless, even if the Court were to consider that question, Parra clearly has alleged facts that amount to an overtime violation.

3. Scope of the Proposed Collective Action

Parra seeks conditional certification of not only all Moonstruck East dishwashers/deliverymen, but also all other non-exempt employees. (See Pl.'s Mem. at 4; ECF No. 32-2 (proposed order certifying collective action)). Although the Defendants do not challenge this proposed scope, Parra has shown only that he is situated similarly to other dishwashers/deliverymen; he has not shown a sufficient factual nexus between himself and any other Moonstruck East non-exempt employees, such as cooks and non-kitchen staff members.

Courts routinely allow employees with different job duties to be grouped in one class so long as they are "similarly situated" under the law. See, e.g., Schwerdtfeger v. Demarchelier Mgmt., Inc., No. 10 Civ. 7557 (JGK), 2011 WL 2207517, at *4 (S.D.N.Y. June 6, 2011) (fact that restaurant employees performed different functions did not bar conditional certification). In that regard, although Flores' affidavit identifies one Moonstruck East cook, Mario, who allegedly worked approximately fifty hours per week, (see Flores Aff. ¶ 9), there is no suggestion that the Defendants did not compensate him adequately, or even that he was paid a fixed weekly salary. Similarly, Parra has not provided any information about the hours or pay rates of any Moonstruck East non-kitchen staff members, nor has he even indicated what other types of workers the restaurant employed. Accordingly, he has not adequately alleged that any such employees are "similarly situated." See, e.g., Yap v. Mooncake Foods, Inc., __ F. Supp. 3d __, No. 13 Civ. 6534 (ER), 2015 WL 7308660, at *8 (S.D.N.Y. Nov. 18, 2015)

(rejecting plaintiffs' invitation to infer from the allegations about deliverymen and chefs that the defendants also failed to pay properly other employees such as wait staff and busboys (citing Garcia v. Spectrum of Creations Inc., 102 F. Supp. 3d 541, 549-50 (S.D.N.Y. 2015) (limiting conditional certification to individuals in the same positions, because plaintiffs "provide[d] no information . . . about individuals who performed other job functions at defendants' business"))). It follows that a collective action can be conditionally certified only on behalf of the dishwashers/deliverymen that the Defendants employed.

B. Notice to Similarly-Situated Plaintiffs

Parra further requests court-facilitated notice of this action to all potential opt-in plaintiffs. Although he does not explicitly seek the Court's approval of his proposed notice, and even failed to attach it to his motion papers,[6] I have assumed that he seeks such approval as part of his request.

The Supreme Court has recognized that the benefits of collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffmann-La Roche, 493 U.S. at 170. District courts therefore are encouraged to "begin [their] involvement [in the notice process] early, at the point of the

---

[6] After Parra's attorney furnished a courtesy copy of the proposed notice to my Chambers and defense counsel via email, defense counsel filed it via ECF. (See ECF No. 32-1 ("Pl.'s Proposed Notice")).

initial notice." Id. at 171. "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." Id. at 172.

District courts have considerable discretion regarding the form the notice will take. Id. at 170. The Defendants do not dispute Parra's right to circulate a notice if a class is preliminarily certified. Indeed, such court-facilitated notice is appropriate "to prevent erosion of claims due to the running statute of limitations, as well as to promote judicial economy." Khamsiri, 2012 WL 1981507, at *1. Parra's request for court-facilitated notice therefore is granted. The only employees who are eligible to opt in, however, are dishwashers/deliverymen. The proposed notice consequently will require modification to reflect that limitation.

In addition, the Defendants have raised six concerns regarding the proposed notice. (See ECF No. 32 ("Defs.' Suppl. Mem.")). First, the Defendants ask the Court to limit distribution of the notice to persons employed within three years of this Court's order granting conditional certification, rather than those employed during the three years prior to the commencement of this action. (Id. at 5-6). Contrary to the Defendants' suggestion, this is not customary in this District. Indeed, "[b]ecause equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 564 n.12 (S.D.N.Y. 2013) (citation and internal quotation marks omitted). Equitable tolling may

be implicated where, as here, the plaintiffs allege that their employer did not post the workplace notices that the FLSA requires. See, e.g., Gaspar v. Pers. Touch Moving, Inc., No. 13 Civ. 8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014) (allowing three-year notice period prior to filing of complaint because of alleged workplace notice violation). The Defendants' first request for a modification is therefore denied.

Next, the Defendants contend that Parra's request to post the notice at Moonstruck East would serve no purpose because they are willing to disclose the names and last known addresses of the putative class members. (Defs.' Suppl. Mem. at 6-7). Although Parra has not requested such disclosure, courts in this District routinely require it. See, e.g., Martin v. Sprint/United Mgmt. Co., No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) (collecting cases). In other cases, I have required that a notice be posted. See, e.g., Kim v. E. 5th St., LLC, 985 F. Supp. 2d 439, 452 (S.D.N.Y. 2013). Here, however, it might be confusing as well as disruptive since only a subset of the current employees of Moonstruck East are eligible to opt into the suit. Accordingly, by July 8, 2016, the Defendants shall produce to Parra's counsel a list (in Excel format, if that is reasonably available) setting forth the names, addresses, email addresses, telephone numbers, and dates of employment of all dishwashers/deliverymen employed by the Defendants since August 21, 2012. If Parra concludes that this list is an inadequate means of identifying all of the current employees of the Defendants, he may renew his request to post the notice.

The Defendants' third requested modification seeks to have the notice identify defense counsel. (Defs.' Suppl. Mem. at 7). This request is reasonable and routine. Accordingly, Parra should insert the following language, at the top of page five of the proposed notice:

> **DEFENDANTS' ATTORNEY**
>
> The Defendants are represented in this action by attorney Arthur H. Forman, 98-20 Metropolitan Avenue, Forest Hills, New York 11375, (718) 268-2616.

Next, the Defendants contend that the opt-in period should be 45 days, half of the three months requested by Parra. (Id. at 7). Judges in this District routinely allow 60 days, absent a showing that more time is necessary. See, e.g., Diaz v. S & H Bondi's Dep't Store, No. 10 Civ. 7676 (PGG), 2012 WL 137460, at *8 (S.D.N.Y. Jan. 18, 2012) (collecting cases). Parra should, therefore, modify his proposed notice accordingly.

Next, the Defendants contend that the notice should include language explaining that they believe a collective action is not warranted. (Defs.' Suppl. Mem. at 7-8). The proposed notice, however, already contains that information, stating that: "Moonstruck denies that it violated the law, that it owes any employee any additional compensation, and that it owes liquidated damages." (Pl.'s Proposed Notice at 2). Since the description of Parra's claims is itself only one sentence, (see id.), the Defendants' proposed language would be overkill, see Delaney v. Geisha NYC, LLC, 261 F.R.D. 55, 59 (S.D.N.Y. 2009).

Finally, the Defendants ask that the notice require that opt-in consent forms be sent to the Clerk of the Court. (Defs.' Suppl. Mem. at 8-9). This is unnecessary and would be burdensome to the Court. See Whorley v. Jonrocman 930, LLC, No. 14 Civ. 1239 (PKC), 2015 WL 3609152, at *4 (S.D.N.Y. June 8, 2015) (directing counsel to "remove the clause that allows consent forms to be received by the Clerk of the Court.").[7] In the alternative, the Defendants also request that both opt-in plaintiffs choosing to be represented by Parra's counsel and those electing to retain other counsel or to proceed pro se be required to "file" their notices by the deadline. (Defs.' Suppl. Mem. at 8-9). This request, which levels the playing field and will avoid confusion, is granted.

## IV. Conclusion

For the reasons set forth above, Parra's motion for conditional certification of a collective action and related relief, (ECF No. 24), is granted in part, and denied in part. By July 8, 2016, the Defendants shall produce to Plaintiff's counsel the information concerning their dishwashers/deliverymen required by this Memorandum Decision and Order. By that same date, counsel shall agree on the language of the notice to be sent to Moonstruck East employees who are eligible to opt in to this suit. The notice itself shall

---

[7] The decision in Whorley later was vacated due to plaintiff's counsel's failure to submit a revised order and notice. (See 14 Civ. 1239, ECF Nos. 29, 30).

be sent to those employees by July 18, 2016. Finally, a telephone conference shall be held on July 19, 2016 at 10 a.m. Counsel for the Plaintiff shall initiate that call. Requests for adjournment must be made to the Court, in writing, at least 24 hours prior to the conference.

SO ORDERED.

Dated: New York, New York
June 27, 2016

FRANK MAAS
United States Magistrate Judge

Copies to all counsel via ECF